# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Matthew Hogan, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>      - against -<br><br>PointsBet New York LLC,<br><br>            Defendant | Class Action Complaint<br>Case No.: 1:22-CV-0594 (GTS/DJS)<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.     PointsBet New York LLC ("Defendant") operates a sports betting platform within New York and entices the public to place wagers by promising "Risk Free" bets.

2.     Defendant promoted "Risk Free" bets by saturating digital, print, radio and other media with such advertisements prior to beginning operations in this State in early 2022.



3.    The "Risk Free" bets are commonly offered in amounts of $500 and $2,000.





4.    This advertising has been effective, as Defendant continues to break records with the monies taken in.

5.    New York requires that all advertisements for gambling "comply with Racing, Pari-Mutuel Wagering and Breeding Law [PML] section 1363 and with advertising guidelines issued by the National Council on Problem Gambling." 9 N.Y.C.R.R. § 5325.6.

6.    This requires that "[A]dvertising shall be based upon fact, and shall not be false, deceptive or misleading." PML § 1363.

7.     The use of "any type, size, location, lighting, illustration, graphic depiction or color resulting in the obscuring of any material fact" is prohibited. PML § 1363(a).

8.     Also prohibited are advertisements which "[F]ail[s] to clearly and conspicuously specify and state any material conditions or limiting factors." PML § 1363(b).

9.     By inducing customers through offering "Risk Free" bets which are not without risk, customers are misled to wager in the first instance, and to do so with Defendant's platform.

10.     According to Matthew Walther of the Atlantic Monthly, "What [risk free] mean[s] is that if you bet $300 and win, you will be able to withdraw your winnings …; if you lose, your forfeited wagers become credits that can be used for future bets. Risk-free bets serve one purpose: ensuring that you continue to make use of the platform."

11.     In fact, "[A] record number of Americans are putting their hard-earned money into these 'no-risk' platforms."[1]

12.     These promotions are advertised as "Risk-Free," so customers believe that if their bet of $500 is lost, the same amount of money in free bets, i.e., $500, would be credited to their account.

13.     This representation is false because if the customer's bet wins, they do not receive the wager amount itself.

14.     For example, if a customer places a $500 wager with very good odds that would return $600 if won by betting cash, that same customer would only receive $100 if using the "risk free" bet amount.

15.     The result would be a loss of $400 because Defendant would retain that money, so it

---

[1] Abraham Blondeau, *Gambling is a Plague on America – Is America's pastime sports or betting on sports?*, The Trumpet, May 16, 2022.

is not risk free.

16.    Defendant's "Risk Free" advertising is misleading, contrary to PML § 1363.

17.    Nowhere in the fine print is it disclosed that the "dollars" of the free-bets are different from actual dollars, and worth much less. PML § 1363(a)-(b).

18.    Competitor sports gaming companies promote their betting options in a more transparent and truthful manner.

19.    While one well-known company also keeps free bet wagers, it does not advertise such bets as "Risk Free."

20.    Another company advertises "Risk Free" bets but pays them the same way it pays cash bets.

21.    Defendant is aware that its customers expect its risk free bets to be treated similarly to bets made in cash, as customer service personnel have tacitly acknowledged this is a common complaint.

22.    Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of wagering opportunities, relative to their own betting options and other comparable options.

23.    The value of the acceptance of the offer for the "risk free" bets that Plaintiff purchased were materially less than the value as represented by Defendant.

24.    Defendant brought in more customer bets through advertising "Risk Free" bets than it would have in the absence of this misconduct, resulting in additional profits at the expense of customers.

25.    Had Plaintiff known the truth, he would not have accepted the offer for the "risk free" bet or would have done so on different terms.

26.     As a result of the false and misleading representations, the risk free bets ensnare customers who were not predisposed to any betting, and among those who were already placing wagers, pushes them to using Defendant's platform, instead of other platforms which provide risk free bets that are treated in a similar way to a cash bet would be.

Jurisdiction and Venue

27.     Jurisdiction is pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

28.     The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

29.     Documents filed by Defendant with New York State reveal Defendant has taken in far in excess of $5 million in the time since it began taking sports bets in New York.

30.     A significant percentage of this total is directly attributable to Defendant's ubiquitous advertising, which lures in persons who have never placed sports bets, and those who have, to use PointsBet over other platforms.

31.     Plaintiff Matthew Hogan is a citizen of New York.

32.     Defendant PointsBet New York LLC is a New York limited liability company with a principal place of business in Denver, Denver County, Colorado and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

33.     The sole member of Defendant is PointsBet USA Holding, Inc., a Delaware corporation with a principal place of business in Denver, Colorado.

34.     The PointsBet entities are subsidiaries of Pointsbet Holdings Ltd., a publicly traded Australian multinational technology and competition platform.

35.     In January 2019, PointsBet began operations in the United States and quickly

expanded into almost a dozen states.

36.     PointsBet's exclusive partnership with NBC Sports lets it reach audiences of the most watched sporting events.

37.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

38.     Tens of thousands of New Yorkers have placed wagers with PointsBet as a result of their advertisements promising "risk free" bets.

39.     Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in this District, because (1) Defendant operates in this District by being licensed in this State and accessible through the internet, (2) Plaintiff resides in this District and (3) Plaintiff placed wagers in this District based on viewing the challenged advertising in this District.

Parties

40.     Plaintiff Matthew Hogan is a citizen of Saratoga Springs, Saratoga County, New York.

41.     Defendant PointsBet New York LLC is a New York limited liability company with a principal place of business in Denver, Colorado, Denver County.

42.     Defendant's registered agent is listed as PointsBet New York LLC, 1331 17th St Ste 900 Denver CO 80202-5860.

43.     As one of the earliest licensed sports books in New York, Defendant has a high level of name recognition among those who wager on athletic competitions.

44.     PointsBet is known throughout the gaming industry for its innovative betting options, which it invented in Australia.

45.    Since PointsBet is a licensed sports book with New York regulatory authorities, customers will not expect that it will mislead them about significant terms, such as describing when a bet was "Risk Free."

46.    The purpose of having strict regulations is to prevent the public from being harmed by gambling operations, which means the public will not expect outright dishonesty from Defendant's advertisements.

47.    Plaintiff placed sports wagers through PointsBet, pointsbet.com, between April 1, 2022 and May 31, 2022, among other times, as a result of viewing its advertisements for "Risk Free" bets on the internet, television, and/or billboards, and/or heard the advertisements on the radio.

48.    The advertisements did not conspicuously disclose that the money that was part of the "Risk Free" bet would be treated differently than if Plaintiff placed a bet in cash.

49.    Plaintiff relied on the words, terms coloring, descriptions, layout, placement, fonts, and/or images which accompanied the audio and visual advertisements about the risk free bets.

50.    Plaintiff provided or will provide notice to Defendant, its agents, representatives and employees about the misrepresentations of its "risk free" bets.

51.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

52.    Plaintiff would not have placed the risk free wagers or would not have done so on the same terms if he knew the representations and omissions were false and misleading.

53.    Plaintiff chose between wagering on Defendant's platform and other platforms, which did not offer "risk free" bets, or not wagering at all.

54.     The "risk free" bets were  worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

55.     Plaintiff intends to, seeks to, and will avail himself of beneficial offers and promotions with respect to sports wagering when he can do so with the assurance the representations are truthful and do not omit significant information.

56.     Plaintiff is unable to rely on the labeling and representations not only of Defendant's wagering opportunities, but of other sports books and take advantage of their offers, because he is unsure whether those representations are truthful.

<u>Class Allegations</u>

57.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who placed sports bets with Defendant during the statutes of limitations for each cause of action alleged; and

58.     Common questions of issues, law, and fact predominate and include whether Defendant's representations and actions were and are misleading and unlawful and if Plaintiff and class members are entitled to damages.

59.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, unlawful, misleading, and deceptive representations, omissions, and actions.

60.     Plaintiff is an adequate representative because his interests do not conflict with other members.

61.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

62.     Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

63.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

64.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>

<u>(Consumer Protection Statute)</u>

65.    Plaintiff incorporates by reference all preceding paragraphs.

66.    Plaintiff wanted to receive an offer of a risk free bet that would treat dollars the same regardless of if the bet was placed by using the risk free option or through using cash.

67.    Defendant's false, misleading, unlawful and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

68.    Defendant misrepresented the "Risk Free" bets through statements, omissions, ambiguities, half-truths and/or actions.

69.    Defendant violated PML § 1363, established by the State Legislature to prevent companies from misleading consumers with respect to false advertisements about gambling.

70.    Plaintiff relied on the representations and omissions and expected that a risk free bet would treat dollars the same regardless of if the bet were placed by using the risk free option or through using cash.

71.    Plaintiff would not have placed the "risk free" bets, would have done so on different terms, or used another sports gaming platform, had the true facts had been known, suffering damages.

<u>Breaches of Contract</u>

72.    The "Risk Free" bets were an offer to Plaintiff to place wagers on sporting events.

73.     The terms of that offer included treating the money wagered the same, if a bet were placed as cash or was used as part of the risk free bet.

74.     Plaintiff accepted the offer by placing wagers on sporting events with Defendant's platform.

75.     Defendant breached the contract because the dollars bet were not treated the same if Plaintiff's bet was placed in cash.

76.      Plaintiff suffered damages in an amount to be proven at trial as a result of Defendant's breach.

<u>Negligent Misrepresentation</u>

77.     Defendant had a duty to truthfully represent its risk free bets, which it breached.

78.     This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a company licensed and authorized by the New York State Gaming Commission, which subjects all licensees to strict regulations and requirements, and a pioneer in the sports gaming industry.

79.     Defendant's representations and omissions regarding the risk free bets went beyond the specific representations in its advertising and promotions, as they incorporated the extra-labeling promises and commitments to integrity necessary for a company to obtain a highly coveted gaming license in New York, and its reputation as a wagering innovator in Australia.

80.     These promises were outside of the standard representations that other companies may make in a standard arms-length, business-to-consumer context.

81.     The representations took advantage of customers' cognitive shortcuts made at the point-of-sale and their trust in Defendant and in the State, to ensure a gaming environment that did not deceive them.

10

82.   Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his acceptance of the offer for the "risk free" bets.

Fraud

83.   Defendant misrepresented and/or omitted the attributes and qualities of the "risk free" bets.

84.   Plaintiff expected to receive an offer of a risk free bet that would treat dollars the same regardless of if the bet were placed by using the risk free option or through using cash, which is how it was conveyed to Plaintiff through the marketing of Defendant.

85.    Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

86.   Defendant knew of the issues described here yet did not address them, indicated by the tacit admissions of its customer service representatives who recognized that many customers experienced the same thing Plaintiff did.

87.   Defendant's fraudulent intent is evinced by its knowledge that its risk free bets were not consistent with its representations and expectations.

Unjust Enrichment

88.   Defendant obtained benefits and monies because the risk free bets were  not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution, statutory penalties and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   June 6, 2022

                                     Respectfully submitted,

                                     /s/Spencer Sheehan

                                   Sheehan & Associates, P.C.
                                   Spencer Sheehan
                                   60 Cuttermill Rd Ste 412
                                   Great Neck NY 11021
                                   Tel: (516) 268-7080
                                   spencer@spencersheehan.com